NELSON BUMGARDNER PC
Ed Nelson III (*pro hac vice*)
ed@nelbum.com
Ryan P. Griffin (*pro hac vice*)
ryan@nelbum.com
3131 West 7th Street, Suite 300
Fort Worth, TX 76107
Telephone: (817) 377-9111

CALDWELL CASSADY & CURRY
Bradley W. Caldwell (*pro hac vice*)
bcaldwell@caldwellcc.com
John A. Curry (*pro hac vice*)
acurry@caldwellcc.com
2101 Cedar Springs Road, Suite 1000
Dallas, TX 75201
Telephone: (214) 888-4848

LECLAIRRYAN LLP
Patricia L. Peden (SBN 206440)
patricia.peden@leclairryan.com
44 Montgomery St., Thirty First Floor
San Francisco, CA 94104
Telephone: 415-391-7111
Facsimile: 415-391-8766

Attorneys for Defendants Acacia Research Corporation, Cellular Communications Equipment LLC, Cellular Communications Equipment GmbH, Saint Lawrence Communications LLC, and Saint Lawrence Communications GmbH

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **APPLE INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**NOKIA CORPORATION**, *et al*.,<br><br>Defendants. | Case No. 5:16-cv-07266-EJD<br><br>**ACACIA PARTIES' SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>DATE: August 31, 2017<br>TIME: 9:00 a.m.<br>JUDGE: Honorable Edward J. Davila |

Apple has failed to plausibly plead a legally-recognized cause of action. The mechanism by which Apple asserted that Acacia acquired contractual obligations does not—as a matter of law—impose contractual obligations. Other theories, which Apple *did not plead*, still leave Apple without a breach of contract action it can enforce. And, in either case, Apple has not pled that any patent that Acacia refuses to license on FRAND terms is actually essential, thus failing to plead that Acacia breached any contract by refusing to license those patents on FRAND terms.

A.  **Apple Has Not Pled the Existence of Any Contractual Obligation it is Entitled to Enforce.**

Apple alleges no direct contract between Acacia and ETSI.[1] Rather, it alleges that Acacia is bound by Nokia's ETSI commitments—to which Acacia is not a party.[2]

Moreover, there is no question that Apple's breach of contract claim must be dismissed if it now depends on any contract between Nokia and Acacia. Apple nowhere pled a contract claim based on Nokia contractually binding Acacia to license SEPs on FRAND terms.[3] Instead, Apple pled the opposite: that Nokia and Acacia had a meeting of the minds—despite the natural reading of the terms of any written contract—that Acacia would *not* license SEPs acquired from Nokia on FRAND terms.[4] If what Apple pleads is true, then Acacia *performed* (i.e., did *not* breach) the Nokia-Acacia "agreement" by (according to Apple) refusing to license on FRAND terms.

On the other hand, even if Apple had pled that the Nokia-Acacia contract bound Acacia

---

[1] *Compare* FAC ¶ 105 (ETSI agreements with "original" patent holder "continue to bind" Acacia), ¶ 66 (FRAND commitments were "made by the original patent owners"); *with* ECF 93 (Opp. Br.) at 41. Acacia has a contractual obligation to Nokia—but not to ETSI or Apple—to license its SEPs on FRAND terms. If Nokia suffers harm because Acacia breached this obligation, Nokia might sue Acacia; but Apple cannot.
[2] *See* ECF 93 (Opp. Br.) at 39-40 (purportedly identifying patents at issue, all of which Acacia acquired *after* FRAND commitment was made); FAC ¶¶ 66-69 (alleging that Nokia made FRAND commitments, then transferred patents to CCE).
[3] *See* FAC ¶¶ 102-108 (alleging *only* contracts with ETSI).
[4] It is black-letter law that where "the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning." Restatement (Second) of Contracts, § 201 (1981). Apple cannot plead these theories in the alternative. *Segen v. Rickey*, 2008 U.S. Dist. LEXIS 23226, *9 (N.D. Cal. Feb. 29, 2008) ("While pleading in the alternative is allowed, Plaintiff cannot plead contradictory versions of the facts.").

to license on FRAND terms, Apple still did not plead that it is an intended third-party beneficiary of that agreement.[5] Rather, Apple pled only that the purpose of any agreement was to harm—not benefit—Apple. ECF 75 (Acacia Br.) at 3. But even if Apple can claim beneficiary status, Apple's right to enforce the Nokia-Acacia contract is *still* dependent on the contracting parties' *intent* to permit Apple to enforce it. Accepting Apple's allegation as true that Nokia and Acacia never intended that Acacia license on FRAND terms (irrespective of the terms of the Nokia-Acacia contract), there is no plausible reason that Nokia and Acacia would intend for Apple to enforce the FRAND licensing provision.[6]

Further, Apple's contract-by-operation-of-patent-law theory lacks legal support. Apple does not dispute that downstream purchasers of patents do not assume the contractual privity of prior owners. *See* ECF 75 (Acacia Br.) at 2. Apple merely asserts that Acacia's authority on privity is inapposite,[7] claiming those cases decided patent issues under contract law rather than patent law. That is rather the point; Apple asserts breach of contract here, not a defense to infringement. Acacia's cases directly address the issue of contractual privity, which is essential to a *breach of contract* claim.

Nevertheless, patent law does not support Apple's theory. ETSI itself recognizes that FRAND commitments do not run with patents in all jurisdictions.[8] Under U.S. law, FRAND commitments do not run with a patent,[9] and Apple's effort to distinguish the on-point authority

---

[5] Additionally, if Acacia and Nokia did not intend that Nokia be able to enforce a FRAND obligation, *a fortiori* Acacia and Nokia did not intend to let *Apple* enforce that obligation, and Apple would lack standing to bring suit. *See Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017).

[6] *See* 17A Am Jur 2d Contracts § 420; *SEC v. Prudential Sec.*, 136 F.3d 153, 159 (D.C. Cir. 1998); Restatement (Second) of Contracts § 302(1).

[7] *See* ECF 93 (Opp. Br.) at 42, n. 30 (distinguishing *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 08-1658, 2009 U.S. Dist. LEXIS 88527 (N.D. Tex. Sept. 25, 2009); *In re Particle Drilling Techs.*, No. 09-33744, 2009 Bankr. LEXIS 2151 (Bankr. S.D. Tex. July 29, 2009)).

[8] *See* FAC ¶ 64, ETSI IPR Policy Annex 6, Clause 6.1*bis* (ETSI interpretation that FRAND commitments run with patent "may not apply in all legal jurisdictions.").

[9] Patents are personal property and encumbrances to personal property are disfavored in the law. *See* National Research Council, *Transfers of Patents with Licensing Commitments*, in *Patent Challenges for Standard-Setting in the Global Economy* 88 (Keith Maskus & Stephen A. Merrill, eds., 2013) (characterizing servitude theory of FRAND obligations as "unknown and

in *Vizio* is misplaced.[10]  The court in *Vizio* declined to find that a patent transferee had FRAND obligations to an SSO, and held that conclusory allegations that the transferee acquired such obligations via patent transfer alone were insufficient.  *Vizio, Inc. v. Funai Elec. Co.*, 2010 U.S. Dist. LEXIS 30850, *15-16 (C.D. Cal. Feb. 3, 2010).  That *Vizio* analyzed the transferability of FRAND commitments in the context of an antitrust claim, rather than a contract claim, does not limit the applicability of the case.  Rather, it demostrates that Apple's failure to allege a contractual commitment to adhere to FRAND is as fatal to Apple's antitrust claims as it is to Apple's contract claims.

Apple's cited authorities do not contradict this conclusion.  *Barnes & Noble, Inc. v. LSI Corp.* distinguished *Vizio* on the basis that *Vizio* "does not consider patent law or any defenses to the enforceability of the patent" and held that an accused infringer could bring *defenses related to inequitable conduct* before an SSO based on the past behavior of a *predecessor entity*.  849 F. Supp. 2d 925, 931-33 (N.D. Cal. 2012) (emphasis added).  There is no dispute here that patents transfer subject to rights to use (but not the procedural terms of the licenses[11]), and that some equitable defenses to enforcement survive patent transfer.  But patent defenses cannot create *contractual* liability on transferees to the prior owners' commitments for negotiating licenses.

**B.     Apple Does Not Plead that Acacia Failed to License any SEPs.**

Apple's theory of pleading appears to be that alleging breach broadly permits it to do so vaguely.  While Acacia and Conversant stand on their points that failing to identify any

---

speculative" because "the weight of authority and precedent appears to be against the imposition of servitudes on personal property"); s*ee also Jones v. Cooper Indus.*, 938 S.W.2d 118 (Tex. App. Houston (14th Dist.) 1996) ("Since a patent is to be treated as personal property, there can be no covenants that 'run with' the patent.").
[10] *See* ECF 93 (Opp. Br.) at 42, n.31 (discussing *Vizio*).
[11] *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372-1373 (Fed. Cir. 2008) (holding that transfers of patents take place subject to licensed rights to use, but not procedural terms); *Paice LLC v. Hyundai Motor Co.*, 2014 U.S. Dist. LEXIS 154254, *14-18 (D. Md. Oct. 29, 2014) (holding that *Datatreasury* applied to all purported procedural terms of agreement). Procedural terms include at least arbitration and confidentiality agreements. *See id*.

communication constituting failure to license on FRAND terms is fatal to Apple's allegations,[12] and that there is no blanket obligation to refrain from seeking injunctions, the most important failure of Apple's breach allegations as to Acacia is the failure to identify a single actually-essential patent.

Apple cites to *Apple, Inc. v. Motorola Mobility, Inc.* for the proposition that it need not allege actual essentiality.[13]  While Apple's allegations regarding the contractual obligations imposed by three different SSOs (ETSI, IEEE, and TIA) may have been sufficient at the time of that decision, two later ITC decisions—on a full record—held that the obligations attendant to ETSI's IPR Policy and undertaking are conditioned on *actual* essentiality.[14]  Together with near-universal scholarly acquience on the point, the ITC decisions undermine Apple's reliance on its proferred authority.[15]

In this case, with a model of the undertaking that purportedly binds Acacia in the record (*see* ECF 76.9, Appx. A), and with the benefit of settled law interpreting the ETSI IPR clauses at issue, the Court need not credit Apple's legal conclusions on the extent of Defendants' FRAND obligations.[16]  Apple obfuscates the issue by quoting the ETSI IPR Policy Clause 6.1, which

---

[12] For instance, Apple cites irrelevant allegations that have nothing to do with the any alleged Acacia contractual breaches related to the SEPs supposedly at issue here.  *See* FAC ¶¶ 75-77 (discussing SEPs obtained from entities other than Nokia); ¶¶ 72, 78 (discussing enforcement by foreign entity of SEPs under German law).

[13] 2011 U.S. Dist. LEXIS 72745, *16-17 (W.D. Wis. June 7, 2011); *see also*, ECF 93 (Opp. Br.) at 43. Apple also cites to *Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 67102, *34-45 (N.D. Cal. May 14, 2012), which did not address Acacia's argument.

[14] *See* ECF 75 (Acacia Br.) at 3-4.

[15] *See also, e.g.*, J. Gregory Sidak, *International Trade Commission Exclusion Orders for the Infringement of Standard-Essential Patents*, 26 Cornell J. L. & Pub. Pol'y 125, 149 (2016); D. Daniel Sokol and Wentong Zheng, *FRAND in China*, 22 Tex. Intell. Prop. L.J. 71, 71 (2013); Srivdhya Ragavan et al., *FRAND v. Compulsory Licensing: the Lesser of the Two Evils*, 14 Duke L. & Tech. Rev. 83, 90 (2015); David W. Long, *Litigating Standard Essential Patents at the U.S. International Trade Commission*, 17 Sedona Conf. J. 671 (2016) (describing ITC ruling that "FRAND declarations to ETSI were conditioned on the patents being essential to the standard"); Megan M. La Belle, *Against Settlement of (Some) Patent Cases*, 67 Vand. L. Rev. 375, 435 (2014).

[16] *See Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) (holding that "interpretation and meaning of contract provisions are questions of law").  The IPR undertaking is unambiguous

obliges the *Director-General* to *request* an *undertaking* by owners of potentially-essential patents.[17] However, the document that *constitutes* the actual undertaking *limits* the obligation to license under Clause 6.1 to those patents that are *actually essential*, as found by every tribunal to fully consider the issue.

This Court would not be drawing an inference against Apple by refusing to assume that some unspecified patent is essential despite Apple's failure to plead it. Apple avoided pleading essentiality on purpose.[18] Moreover, Acacia's trial victory does not obviate Apple's need to plead essentiality here: non-essential patents are infringed all the time, and Apple claimed (and still claims) that Acacia's patent was not essential rather than acknowledging that Apple necessarily infringed by practicing the standard, and was thus entitled to a FRAND royalty.

DATED: May 16, 2017   /s/ *Ed Nelson III*

NELSON BUMGARDNER PC
Ed Nelson III (*pro hac vice*)
ed@nelbum.com
Ryan P. Griffin (*pro hac vice*)
ryan@nelbum.com
3131 West 7th Street, Suite 300
Fort Worth, TX 76107
Telephone: (817) 377-9111

Attorneys for Defendants Acacia Research Corporation, Cellular Communications Equipment LLC, Cellular Communications Equipment GmbH, Saint Lawrence Communications LLC, and Saint Lawrence Communications GmbH

---

and Apple has not advanced a contrary interpretation of the document, citing instead to policies that are admittedly not contracts.

[17] *See* ECF 93 (Opp. Br.) at 43, quoting ETSI IPR Policy Clause 6.1, Annex 6.

[18] Throughout the Complaint, Apple refers to "declared SEPs" or "alleged SEPs" rather than "SEPs" or otherwise indicating that patents at issue are, in fact, essential. *See*, *e.g.*, FAC ¶¶ 4, 27-30, 32-33, 42, 70-71.

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2017, I electronically filed the foregoing document, the Acacia Parties' Supplemental Reply Memorandum in Support of Motion to Dismiss Plaintiff's First Amended Complaint, with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following attorneys of record who have consented to accept this Notice as service of this document by electronic means:

Mark D. Selwyn (SBN: 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: + 1 650 858 6000
Facsimile: + 1 650 858 6100

William F. Lee
william.lee@wilmerhale.com
Joseph J. Mueller
joseph.mueller@wilmerhale.com
Timothy Syrett
timothy.syrett@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: + 1 617 526 6000
Facsimile: + 1 617 526 5000

Leon B. Greenfield
leon.greenfield@wilmerhale.com
Nina S. Tallon
nina.tallon@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: + 1 202 663 6000
Facsimile: + 1 202 663 6363

By:   */s/ Ed Nelson III*