JAMES C. YOON, State Bar No. 177155
MAURA L. REES, State Bar No. 191698
RYAN R. SMITH, State Bar No. 229323
JAMIE Y. OTTO, State Bar No. 295099
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100
Email:      jyoon@wsgr.com
            mrees@wsgr.com
            rsmith@wsgr.com
            jotto@wsgr.com

*Attorneys for Defendant*
*VOICEAGE CORPORATION*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE  INC., | Case No. 5:16-CV-7266-EJD |
| Plaintiff, | Assigned to Hon. Edward J. Davila |
| vs. | **VOICEAGE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(2)** |
| ACACIA RESEARCH CORPORATION, SAINT LAWRENCE COMMUNICATIONS, LLC, SAINT LAWRENCE COMMUNICATIONS GMBH, AND VOICEAGE CORPORATION, | JURY TRIAL DEMANDED |
| Defendants. | Date: February 22, 2018<br>Time: 10 a.m.<br>Judge: Honorable Edward J. Davila<br>Courtroom: 4 - 5th Floor |

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 22, 2018, at 10:00 a.m., or as soon thereafter as may be heard, before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, San Jose, California, Defendant VoiceAge Corporation ("VoiceAge" or the "Defendant"), will and hereby does move, pursuant to Federal Rule of Civil Procedure 12(b) to dismiss Plaintiff's Second Amended Complaint (the "SAC"). This Motion is supported by this Notice, Motion and Memorandum of Points and Authorities in Support of the Motion; the attached exhibit ("Ex. A"); all pleadings and papers filed herein; oral argument of counsel; and any other matter properly before this Court.

**RELIEF SOUGHT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), VoiceAge respectfully requests that the Court dismiss each claim asserted against it in the Second Amended Complaint with prejudice for failure to state a claim upon which relief can be granted and lack of personal jurisdiction.

Dated:  December 7, 2017

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ James C. Yoon*
James C. Yoon

*Attorneys for Defendant*
*VOICEAGE CORPORATION*

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

II.    INTRODUCTION .......................................................................................................... 1

III.    STATEMENT OF FACTS ............................................................................................. 2

IV.    APPLE'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED
        UNDER THE FIRST-TO-FILE RULE .......................................................................... 4

V.    APPLE'S CLAIMS AGAINST VOICEAGE SHOULD BE DISMISSED
        PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM. .................... 6

        A.    Legal Standard ................................................................................................... 6

        B.    Apple's Breach of Contract Claim Should Be Dismissed Because Apple
                Fails to Allege Any Specific Provisions in the ETSI IPR Policy Creating the
                Obligation That VoiceAge Is Said to Have Breached ......................................... 7

        C.    Apple's Sherman Act and California Unfair Competition Law Claims
                Should Be Dismissed Because the SAC Alleges Nothing More than a
                Lawful Agreement and Fails to Allege a Plausible Conspiracy ............................ 9

        D.    Apple's UCL Claim Should Be Dismissed. ....................................................... 11

                1.    If Apple's Sherman Act Claim Fails, Then Apple's UCL Claim Also
                        Fails as a Matter of Law and Should Be Dismissed ................................. 11

                2.    Apple's UCL Claim Should Be Dismissed Because Apple Has
                        Failed to Allege Facts to Support Standing to Pursue a UCL Claim. ....... 12

VI.    APPLE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION ....................... 14

VII.    CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991) ............................................................... 4, 6

*Am. Tobacco Co. v. United States*,
    328 U.S. 781 (1946) ............................................................................... 10

*Aronson v. Kinsella*,
    58 Cal. App. 4th 254 (1997) .................................................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 6, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................... 6, 9, 10, 11

*Cabesuela v. Browning-Ferris Indus.*,
    68 Cal. App. 4th 101 (1998) .................................................................. 13

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) .................................................................. 11

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) .......................................................................... 12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................... 14

*Comedy III Prods., Inc. v. New Line Cinema*,
    200 F.3d 593 (9th Cir. 2001) ................................................................. 11

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ............................................................................... 10

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ................................................ 11

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ................................................................... 6

*Hall v. Time Inc.*,
    158 Cal. App. 4th 847 (2008) ................................................................ 12

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d 898, 911 (N.D. Cal. 2016) .......................................... 11

*In re Anthem Data Breach Litig.*,
    162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) ............................................ 7

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) .................................................................. 13

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................ 9, 11

*Lerette v. Dean Witter Org., Inc.,*
    60 Cal. App. 3d 573 (1976)..............................................................................................13

*Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n,*
    884 F.2d 504 (9th Cir. 1989)...............................................................................................9

*O'Keefe v. Kompa,*
    84 Cal. App. 4th 130 (2000)............................................................................................13

*Pacesetter Sys. v. Medtronic, Inc.,*
    678 F.2d 93 (9th Cir. 1982)................................................................................................4

*Proofpoint, Inc. v. InNova Pat. Licensing, LLC,*
    No. 5:11-cv-2288, 2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17, 2011)....................6

*Rubin v. Green,*
    4 Cal.4th 1187 (Cal. 1993) .......................................................................................13, 14

*Saint Lawrence Commc'ns LLC v. Apple Inc.,*
    No. 2:16-cv-00082-JRG (E.D. Tex. Nov. 16, 2016) ...........................................................3

*Schwartz v. Frito-Lay N. Am.,*
    No. C -12-02740(EDL), 2012 U.S. Dist. LEXIS 188186 (N.D. Cal. Sep. 12,
    2012).................................................................................................................................4

*Silberg v. Anderson,*
    50 Cal.3d 205 (Cal. 1990) ...............................................................................................13

*Somers v. Apple, Inc.,*
    No. C 07-06507 JW, 2011 WL 2690465 (N.D. Cal. Jun. 27, 2011) ...................................11

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) .......................................................................................6, 10

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ....................................................................................2, 7, 14

*Ward v. Follett Corp.,*
    158 F.R.D. 645 (N.D. Cal. 1994) ........................................................................................4

*Wietschner v. Monterey Pasta Co.,*
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) ..............................................................................7

*Woods v. Google, Inc.,*
    No. 05:11-CV-1263-JF, 2011 U.S. Dist. LEXIS 88795 (N.D. Cal. Aug. 10,
    2011)...............................................................................................................................7, 8

*Z-Line Designs, Inc. v. Bell'O Int'l LLC.,*
    218 F.R.D. 663 (N.D. Cal. 2003) ........................................................................................4

### STATUTES

Cal. Bus. & Prof. Code § 17200...........................................................................2, 5, 11, 13

Cal. Bus. & Prof. Code § 17204.......................................................................................12

Cal. Civ. Code § 47(b) ....................................................................................................13

1

**RULES**

2  Fed. R. Civ. P. 12(b)(2) ......................................................................................14

3  Fed. R. Civ. P. 12(b)(6) ........................................................................................6

4

**MISCELLANEOUS**

5  B. Fages, *Droit des Obligations* 367 n.314 (L.G.D.J., 6e ed. 2016) .................7

6  Restatement (Second) of Contracts § 346 (2017) .............................................7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Plaintiff Apple Inc.'s ("Apple") Second Amended Complaint ("SAC") should be dismissed under the first-to-file doctrine because *Saint Lawrence Communications LLC v. Apple Inc.*, No. 2:16-cv-00082 ("Texas Case"), is a first-filed action currently being litigated in the Eastern District of Texas and involves the same or similar issues and parties.

2.   Whether Apple's breach of contract claim against Defendant VoiceAge Corporation ("VoiceAge") should be dismissed because the SAC fails to allege a breach.

3.   Whether Apple's Sherman Act claim and California's Unfair Competition Law ("UCL") claim against VoiceAge should be dismissed because the SAC fails to allege a plausible conspiracy.

4.   Whether Apple's California UCL claim against VoiceAge should be dismissed on the grounds that Apple lacks standing under the UCL because it fails to state a claim and fails to allege a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, *economic injury*.

5.   Whether Apple has established the Court's personal jurisdiction over VoiceAge.

### II.   INTRODUCTION

The claims raised by Apple in this case are already the subject of a pending litigation in the Eastern District of Texas. Almost two years ago, Acacia[1] filed the Texas lawsuit against Apple asserting patents that Acacia acquired from VoiceAge. In that case, Apple has raised defenses and counterclaims that are based on the same facts as in its complaint here. This duplicative lawsuit is inefficient, will waste judicial and party resources, and creates a risk of inconsistent determinations. Under the first-to-file rule, this lawsuit should be dismissed in favor of the first-filed lawsuit Texas Case.

---

[1] In this motion, defendants Acacia Research Corporation, Saint Lawrence Communications LLC ("SLC"), and Saint Lawrence Communications GmbH ("SLC Germany") are referred to collectively as "Acacia," which is likewise how Apple refers to them in the SAC.

In addition, Apple's SAC is deficient and fails to state a claim. Apple asserts three causes of action against VoiceAge: (i) Count I, Breach of Contract; (ii) Count III, Sherman Act Section 1; and (iii) Count IV, California Unfair Competition Law, California Business & Professions Code § 17200.[2] Apple's breach of contract claim fails a matter of law because Apple fails to identify any provision in the European Telecommunications Standards Institute ("ETSI") Intellectual Property Rights Policy ("IPR Policy") that creates the obligation that VoiceAge is said to have breached. Apple's Sherman Act claim and California UCL claim fail as a matter of law because Apple fails to allege facts sufficient to create a plausible inference of conspiracy rather than unilateral conduct by Acacia. Apple's California UCL should also be dismissed because Apple lacks standing under the UCL. Finally, Apple has not established the Court's personal jurisdiction over VoiceAge.

As such, all claims asserted by Apple against VoiceAge in this action should be dismissed.

## III.    STATEMENT OF FACTS

VoiceAge Corporation ("VoiceAge") is a Canadian corporation headquartered in Montreal. VoiceAge is engaged in the development, integration, marketing, and licensing of its patent portfolio for technologies, products, solutions and services that operate over either, or both, wired or wireless networks.

In December 2013, VoiceAge transferred to Acacia a portfolio of patents, which included patents disclosed as potentially essential to certain standards. *See* Ex. A.[3] Pursuant to the Patent Sale and Purchase Agreement ("Patent Sale Agreement"), Acacia ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

_____

[2] Count II, pursuant to Clayton Act § 7, is asserted only against Acacia.

[3] The Patent Sale and Purchase Agreement between Acacia and VoiceAge, as amended, is attached hereto as Exhibit A. The Court may properly consider the documents attached to the motion because these documents are referenced in and relied upon by the SAC. *See infra* Section IV (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); *e.g.*, SAC ¶¶ 1, 37, 46, 55, 56, 59, 62.

1    ▮▮▮▮▮  *Id*. §§ 2.1, 2.2, 6.2.  Further, pursuant to the agreement,  ▮▮▮▮▮▮▮▮▮▮

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮  *Id*. § 6.1. The Patent Sale Agreement also specifically provided that Acacia

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. §

8    2.1.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. § 9.11.

10    Following the transfer, on January 27, 2016, Acacia's subsidiary SLC unilaterally filed a

11    patent infringement suit against Apple in the Eastern District of Texas, *Saint Lawrence*

12    *Communications  LLC v. Apple Inc.*, No. 2:16-cv-00082 ("Texas Case").  In November 2016,

13    Apple filed a counterclaim against Acacia for breach of contract in the Texas Case, asserting that

14    "VoiceAge agreed to license the Patents-in-Suit on FRAND terms," and that Acacia "became

15    bound by these contractual commitments when it purchased the Patents-in-Suit from VoiceAge."

16    *See* Apple Inc.'s Amended Answer, Defenses, and Counterclaims to Plaintiff Saint Lawrence

17    Communications LLC's Complaint for Patent Infringement ("Apple Texas Countercl.") ¶¶ 79-

18    80, *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-00082-JRG (E.D. Tex. Nov. 16,

19    2016), Dkt. 92.  Apple further asserted in the Texas Case that Acacia "breached these contractual

20    commitments by failing to make a FRAND offer for the Patents-in-Suit." *Id*. ¶ 80.  Extensive

21    discovery has been taken on the subject of Apple's counterclaim from both Acacia and

22    VoiceAge in the Texas Case, the parties have filed expert reports concerning the counterclaim, a

23    summary judgment motion directed to the FRAND issues has been filed, and trial will begin in

24    three months.  Dkt. 123, Acacia's Motion to Dismiss Plaintiff's Second Amended Complaint

25    ("Acacia Mot."), at 3-5; *see also Saint Lawrence Commcn's LLC v. Apple Inc.*, No. 2:16-cv-

26    00082-JRG (E.D. Tex. Nov. 10, 2017), Dkt. 227 (docket entry for "Sealed Motion to Preclude

27    and For Summary Judgment That SLC is Obligated to License the Asserted Patents on Fair,

28    Reasonable, and Non-Discriminatory Terms").

It was not until October 11, 2017, after Apple dismissed its claims in this case against Nokia following a settlement with Nokia, that Apple filed the Second Amended Complaint adding VoiceAge as a defendant.

## IV.    APPLE'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE RULE.

VoiceAge joins Acacia's motion to dismiss Apple's SAC under the first-to-file doctrine. Acacia Mot. at 2.  "The 'first to file' rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court.  *Z-Line Designs, Inc. v. Bell'O Int'l LLC.*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (citation omitted); *see also Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) ("There is a generally recognized doctrine of federal comity which permits a  district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."). "In applying this rule, a court looks at three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Z-Line Designs*, 218 F.R.D. at 655 (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)).[4]   Here, the Texas Case is the first-filed litigation with essentially the same parties and the same issues.  Although Apple's claims adding VoiceAge as a named defendant are additional claims, "these claims are closely related to the main claims in both cases" and thus do not justify disregarding the first-to-file rule.  *Schwartz v. Frito-Lay N. Am.,* No. C -12-02740(EDL), 2012 U.S. Dist. LEXIS 188186, at *8 (N.D. Cal. Sep. 12, 2012).

Apple's claims against VoiceAge in this action are based on VoiceAge's alleged "FRAND commitments":

- Count I, Breach of Contract:  "**VoiceAge contractually committed to make its declared SEPs available on FRAND terms and conditions**. FRAND commitments are binding on all subsequent patent owners, including Acacia, which agreed to be bound by VoiceAge's FRAND commitments at the time it purchased VoiceAge's patents."  SAC ¶ 43 (emphasis added). "VoiceAge breached these contracts by transferring them to Acacia with the knowledge and intent that Acacia would not abide by the terms of VoiceAge's FRAND commitment." *Id*. ¶ 46.

---

[4] *See also Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991); *Pacesetter*, 678 F.2d at 95.

- Count III, Illegal Agreement Restraint of Trade (Section 1of the Sherman Act): "**VoiceAge conspired with Acacia to transfer declared SEPs to Acacia for the purpose and with the effect of evading VoiceAge's FRAND commitments** and exploiting the patents in ways that VoiceAge could not by acting alone." *Id.* ¶ 55 (emphasis added).

- Count IV, Unfair Competition under Cal. Bus. & Prof. Code § 17200: "Acacia's and VoiceAge's unfair business practices include their conspiracy **to evade VoiceAge's FRAND commitments by transferring declared SEPs to Acacia**." *Id.* ¶ 62 (emphasis added).

Each of these claims is "closely related to the main claims in both cases." In fact, Apple relies on the same underlying facts relating to VoiceAge's FRAND commitments in its defenses and counterclaim in the Texas Case:

- Eighth Defense of Contractual Limitation on Damages: "VoiceAge declared to the [ETSI] in May 2001, October 2004, and January 2010 that the 805, 524, 802, 521, and 123 patents (the 'Patents-in-Suit'), are essential to the technical specifications in the 3GPP and/or ETSI standard for wideband speech coding (the "AMR-WB Specification"). . . . Clause 6.1 of the ETSI IPR policy states, in part, that the signatory (VoiceAge) 'is prepared to grant irrevocable licences [sic] on fair, reasonable and non-discriminatory terms and conditions under such IPR.' **VoiceAge was therefore obligated to license the Patents-In-Suit on fair, reasonable and non-discriminatory ("FRAND") terms**." Apple Texas Countercl. ¶ 62 (emphasis added).

- Ninth Defense of Unenforceability Due to Untimely Disclosure: "**VoiceAge's FRAND obligation transferred with the Patents-in-Suit. SLC acquired the Patents-in-Suit from VoiceAge in 2013 subject to the FRAND commitment.**" *Id.* ¶ 84 (emphasis added). "VoiceAge and/or Nokia had a duty to disclose to ETSI the 805, 524, 802, 123, and 521 patents and related patent applications. VoiceAge and/or Nokia breached that obligation by failing to timely disclose to ETSI the Patents-in-Suit Applications." *Id.* ¶ 97 (emphasis added).

- Sixteenth Counterclaim of Breach of Contract: "Further, as described above in paragraphs 83 through 100 of Apple's Affirmative Defenses, **VoiceAge, the predecessor-in-interest to the Patents-in-Suit, repeatedly agreed to license the Patents-in-Suit on FRAND terms. By committing to license the Patents-in-Suit on FRAND terms**, VoiceAge entered into contractual commitments with ETSI. Apple is an intended third party beneficiary of these contractual commitments. SLC became bound by these contractual commitments when it purchased the Patents-in-Suit from VoiceAge. *Id.* ¶ 79 (emphasis added).

As demonstrated above, Apple pleaded nearly identical and overlapping facts in its Amended Answer, Defenses, and Counterclaims. Based on these similar and related allegations,

1   Apple requested and obtained discovery of VoiceAge documents and witnesses in the Texas

2   Case. As a result, Apple cannot claim that it did not have an opportunity to obtain relevant

3   testimony and discovery from VoiceAge in the Texas Case. As explained by Acacia in its

4   separate motion to dismiss, Apple's own decision not to join VoiceAge as a party in the Texas

5   Case cannot justify disregarding the first-to-file rule. Accordingly, dismissing the SAC under

6   the first-to-file doctrine will "promote[] judicial efficiency and prevent[] the risk of inconsistent

7   decisions that would arise from multiple litigations of identical claims." *Proofpoint, Inc. v.*

8   *InNova Pat. Licensing, LLC*, No. 5:11-cv-2288, 2011 U.S. Dist. LEXIS 120343, at *18 (N.D.

9   Cal. Oct. 17, 2011); *see also Alltrade*, 946 F.2d at 625 (holding that importance of these goals

10   means the doctrine "should not be disregarded lightly").

11   **V.    APPLE'S CLAIMS AGAINST VOICEAGE SHOULD BE DISMISSED PURSUANT
        TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.**

12

13       **A.    Legal Standard**

14       A complaint should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim

15   upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[O]nly a complaint that states a

16   plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679

17   (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must

18   be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

19   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20   statements, do not suffice." *Iqbal,* 556 U.S. at 678. Accordingly, while the Court accepts as true

21   all material allegations in the complaint, it need not accept the truth of conclusory allegations or

22   unwarranted inferences, nor should it accept legal conclusions as true merely because they are

23   cast in the form of factual allegations. *Id*. at 678-79; *accord Epstein v. Wash. Energy Co*., 83

24   F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences

25   are insufficient to defeat a motion to dismiss for failure to state a claim.").

26       Further, the Court should not "accept as true allegations that contradict matters properly

27   subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

28   (9th Cir. 2001). "[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by

1  deliberately omitting documents upon which their claims are based, a court may consider a

2  writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on

3  the document and its authenticity is unquestioned." *Swartz*, 476 F.3d at 763 (citation and

4  internal quotations omitted); *see also Wietschner v. Monterey Pasta Co*., 294 F. Supp. 2d 1102,

5  1110 (N.D. Cal. 2003) ("Where a plaintiff fails to attach to the complaint documents referred to

6  in it, and upon which the complaint is premised, a defendant may attach to the motion to dismiss

7  such documents in order to show that they do not support plaintiff's claim.").

8       **B.**    **Apple's Breach of Contract Claim Should Be Dismissed Because Apple Fails to Allege Any Specific Provisions in the ETSI IPR Policy Creating the**

9               **Obligation That VoiceAge Is Said to Have Breached.**

10  Apple's allegation that VoiceAge breached a contractual obligation by transferring its

11  SEPs to Acacia fails to plead a cause of action for breach of contract.  The plaintiff must point to

12  the "'specific provisions in the contract creating the obligation the defendant is said to have

13  breached.'"  *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016)

14  (citation omitted); *see also Woods v. Google, Inc.*, No. 05:11-CV-1263-JF, 2011 U.S. Dist.

15  LEXIS 88795, at *9-10 (N.D. Cal. Aug. 10, 2011).  There is no question that to make out a claim

16  for breach of contract, the plaintiff must be able to establish a breach.[5]  Here, Apple asserts that

17  "VoiceAge contractually committed to make its declared SEPs available on FRAND terms and

18  conditions" and "VoiceAge breached these contracts by transferring them to Acacia with the

19  knowledge and intent that Acacia would not abide by the terms of VoiceAge's FRAND

20  commitment."  SAC ¶¶ 43-48.  However, Apple fails to allege any specific provisions in the

21  contract creating the obligation that VoiceAge is said to have breached, and therefore, Apple's

22  claim for breach of contract fails as a matter of law.

23

24

25         [5] Restatement (Second) of Contracts § 346 (2017) (to recover for contract damages, plaintiff

26  must prove breach).  This is equally true pursuant to French law, which is designated in a choice of law clause as the law governing the ETSI undertaking.  *See* Acacia Mot. at 6 n.16, citing B.

27  Fages, *Droit des Obligations* 367 n.314 (L.G.D.J., 6e ed. 2016) (Dkt. 74.4) ("contractual liability supposes the reunion of three conditions: the breach of a contractual obligation, a prejudice and a

28  causal link between the two").

1    Apple appears to allege that the breach occurred when VoiceAge sold its SEPs to Apple.

2    *Id.* ¶ 48.  The only ETSI IPR Policy provision identified by Apple that references a transfer of

3    ownership is Clause 6.1bis, Transfer of ownership of ESSENTIAL IPR:

> FRAND licensing undertakings made pursuant to Clause 6 shall be
> interpreted as encumbrances that bind all successors-in-interest.
> Recognizing that this interpretation may not apply in all legal
> jurisdictions, **any Declarant who has submitted a FRAND undertaking**
> **according to the POLICY who transfers ownership of ESSENTIAL**
> **IPR that is subject to such undertaking shall include appropriate**
> **provisions in the relevant transfer documents to ensure that the**
> **undertaking is binding on the transferee** and that the transferee will
> similarly include appropriate provisions in the event of future transfers
> with the goal of binding all successors-in-interest. The undertaking shall
> be interpreted as binding on successors-in-interest regardless of whether
> such provisions are included in the relevant transfer documents.

12    *Id.* ¶ 22 (emphasis added).  However, Clause 6.1bis does not prohibit the transfer of ownership of

13    SEPs.  Instead, it simply states that a transferor of FRAND-encumbered patents must "include

14    appropriate provisions in the relevant transfer documents to ensure that the undertaking is

15    binding on the transferee."  *Id.*  Nowhere in the SAC does Apple allege any facts demonstrating

16    that VoiceAge failed to comply with this provision.  To the contrary, Apple alleges facts to

17    suggest the opposite: that Acacia understood that the FRAND obligations were binding on it:

18    "Acacia has acknowledged in presentations to investors that it is bound by VoiceAge's FRAND

19    commitments, observing that the FRAND obligations applicable to its former VoiceAge."  SAC

20    ¶ 21.  Moreover, the Patent Sale Agreement between Acacia and VoiceAge expressly states that

21    ███████████████████████████████████████████████████████████████████████████████████

22    ████████████████████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████████  Ex. A, §

24    2.1.  In light of these clear facts demonstrating VoiceAge's compliance with the ETSI IPR

25    Policy, Apple has failed to plausibly allege any breach.   Apple's wholly conclusory allegation

26    that "VoiceAge breached these contracts by transferring them to Acacia with the knowledge and

27    intent that Acacia would not abide by the terms of VoiceAge's FRAND commitment" is not

28    supported by any facts pleaded in the SAC.  These are exactly the kind of "mere conclusory

statements" and assertions that do not rise above a "speculative level" that are insufficient to state a claim. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Accordingly, Apple's breach of contract claim against VoiceAge should be dismissed.

### C.  Apple's Sherman Act and California Unfair Competition Law Claims Should Be Dismissed Because the SAC Alleges Nothing More than a Lawful Agreement and Fails to Allege a Plausible Conspiracy.

In addition to the deficiencies in Apple's Sherman Act and UCL claims identified in Acacia's motion to dismiss, the SAC is devoid of any non-conclusory allegations demonstrating the existence of a conspiracy to restrain trade involving VoiceAge. Accordingly, Apple's Sherman Act claim against VoiceAge should be dismissed.

"To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts (such as a conspiracy), but ***evidentiary facts*** which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (citing *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989) (emphasis added). Apple's Section 1 claim fails because the only agreement between VoiceAge and Acacia identified in the complaint is the Patent Sale Agreement. As explained in Acacia's motion to dismiss, a patent transfer alone is insufficient to provide the basis for a Section 1 claim. Acacia Mot. at 34. Apple has failed to identify any provision of the Patent Sale Agreement that demonstrates any anticompetitive conduct by VoiceAge. There are no provisions in the Patent Sale Agreement pursuant to which VoiceAge required Acacia to demand above-FRAND royalties, seek and obtain injunctions, file patent enforcement actions to coerce "non-FRAND" royalties, or carry out any of the anti-competitive conduct asserted by Apple. Ex. A. To the contrary, the Patent Sale Agreement ***negates*** any inference ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

1    ██████████    *Id*. § 2.1.  Moreover, the agreement negates even the ***possibility*** of VoiceAge

2    having any influence over or participating in the imposition of any allegedly "above-FRAND

3    rates" or initiating a "barrage of patent litigation" because ███████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ██████████    *Id*.  Rather, according to the agreement,    ████████████████████

10    ████████████████████████████████████████    *Id*. § 6.1.  The Patent Sale

11    Agreement bears no resemblance at all to the purported conspiracy to commit anticompetitive

12    acts described in the SAC.  Apple has wholly failed to plausibly plead the existence of any intent

13    to restrain trade or participation in an antitrust conspiracy on the part of VoiceAge.

14        Apple's SAC further pleads no facts pointing to a "unity of purpose or a common design

15    and understanding, or a meeting of minds in an unlawful arrangement" that must exist as a basis

16    for Section 1 liability under the Sherman Act.  *Copperweld Corp. v. Independence Tube Corp.*,

17    467 U.S. 752, 771 (1984) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)).

18    As explained by the Supreme Court in *Twombly*:  "In applying these general standards to a § 1

19    claim, we hold that stating such a claim requires a complaint with enough factual matter (taken

20    as true) to suggest that an agreement was made."  550 U.S. at 556.  Here, Apple's allegations

21    reflect nothing more than "naked assertion[s] of conspiracy."  *Id*.  For example, Apple alleges

22    that "VoiceAge conspired with Acacia to transfer declared SEPs to Acacia **for the purpose of**

23    **and with the effect of evading VoiceAge's FRAND commitments** and exploiting the patents in

24    ways that VoiceAge could not by acting alone."  SAC ¶ 55 (emphasis added).   Because this

25    allegation is directly refuted by the    ███████████████████████████████

26    ████████████████████████████████, the Court need not accept it as true.

27    *Sprewell*, 266 F.3d at 988.  Apple has pleaded nothing about the manner in which VoiceAge and

28    Acacia reached the purported agreement to "evade FRAND commitments" alleged in the SAC.

1    *See Kendall*, 518 F.3d at 1048 (affirming dismissal of Section 1 conspiracy claim where

2    complaint failed to "answer the basic questions: who, did what, to whom (or with whom), where,

3    and when?"). This is exactly the type of pleading rejected by *Twombly* and it should be rejected

4    here. *See Twombly*, 550 U.S. at 567 n.12; *Kendall*, 518 F.3d at 1048.

**D.    Apple's UCL Claim Should Be Dismissed.**

6    Apple's claim against VoiceAge under California's Unfair Competition Law, California

7    Business & Professions Code § 17200 ("UCL") should be dismissed because (1) the UCL claim

8    must fall with the Sherman Act claim, and (2) Apple lacks standing.

**1.    If Apple's Sherman Act Claim Fails, Then Apple's UCL Claim Also
Fails as a Matter of Law and Should Be Dismissed.**

11   "[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a

12   violation of another law, the UCL claim rises or falls with the other claims." *Hicks v. PGA Tour,*

13   *Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016) (citing *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F.

14   Supp. 2d 1119, 1146 (N.D. Cal. 2010). That is because "[t]o permit a separate inquiry into

15   essentially the same question under the unfair competition law would . . . invite conflict and

16   uncertainty." *Id.* (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 377 (2001)). Here,

17   the SAC pleads that "Acacia and VoiceAge have engaged and continue to engage in unfair

18   competition in violation of Cal. Bus. [&] Prof. Code § 17200, *et seq.*" on the grounds that

19   "Acacia and VoiceAge have engaged in illegal conduct by violating the Sherman Act." SAC ¶

20   61. Consequently, the conduct Apple asserts is unfair under the UCL overlaps completely with

21   the allegations of Apple's Sherman Act claim. Because Apple's federal claims serve as the basis

22   for its state law claims, the state law claims should be dismissed on the merits. *See, e.g., Comedy*

23   *III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2001) (affirming dismissal of

24   supplemental state claims where common defect was "fatal to all of [the plaintiff's] claims");

25   *Somers v. Apple, Inc.*, No. C 07-06507 JW, 2011 WL 2690465, at *7 (N.D. Cal. Jun. 27, 2011)

26   (dismissing state law claims on where federal antitrust claims were insufficient and served as

27   basis for plaintiff's state law claims).

28

1

**2.    Apple's UCL Claim Should Be Dismissed Because Apple Has Failed to Allege Facts to Support Standing to Pursue a UCL Claim.**

2

3      Apple has failed to allege facts to support its standing to pursue a UCL claim.  Under the

4   UCL, only a person who "has lost money or property as a result of the unfair competition" may

5   bring a private action under the UCL.  Cal. Bus. & Prof. Code § 17204; *Clayworth v. Pfizer, Inc.*,

6   49 Cal. 4th 758, 788 (2010).  California's voters imposed this standing requirement by

7   proposition in 2004, in an effort to reduce misuse of the UCL by private plaintiffs who had not

8   suffered any injury from defendants' actions.  Prop. 64, § 1(e) (2004).  This requirement prevents

9   Apple from relying on alleged harm to others (such as consumers) as its basis for standing.  *Hall*

10  *v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008) (after passage of Proposition 64, UCL plaintiffs

11  can no longer rely on interest of "general public" as a basis for standing).  Accordingly, Apple's

12  claim that Acacia and VoiceAge engaged in conduct that "threatens injury to downstream

13  competition for price, innovation, and quality in markets for cellular devices, **thereby injuring**

14  **consumers** in California and elsewhere" is insufficient to confer standing on Apple.  SAC ¶ 65

(emphasis added).

15      Apple does not adequately allege that it lost money or property as a result of unfair

16  competition by VoiceAge.  Apple's attempt to allege standing for its UCL claim via economic

17  injury to itself consists of a claim that "Apple has suffered economic harm in the form of

18  litigation costs and diversion of resources away from innovation."  *Id.* ¶ 66.  However, the

19  alleged "litigation costs" were allegedly imposed by Acacia, not by VoiceAge.  Apple alleges no

20  lawsuits filed by VoiceAge, and as ███████████████████████████████████

21  ████████████████████████.  As set forth above, Apple also has failed to adequately allege

22  an agreement by VoiceAge to participate in an alleged conspiracy with Acacia to disregard or

23  violate FRAND commitments in the enforcement of the transferred patents.  There is no

24  allegation of economic injury to Apple as a direct result of any identified conduct on the part of

25  VoiceAge.  *See Hall,* 158 Cal. App. 4th at 859 (2008) (affirming dismissal of UCL claim where

26  plaintiff failed to allege economic injury caused by defendant).

27      Further, as explained in Acacia's motion, Apple's asserted basis for UCL standing

28  premised on the payment of "litigation costs" is not proper, because Apple cannot assert tort

claims based on the filing and prosecution of litigation.  *See* Acacia Mot. at 26-29, 37 (*Noerr-Pennington* doctrine provides immunity from statutory liability for conduct when petitioning the government for redress).  In addition to being barred by Acacia's First Amendment right to petition pursuant to the *Noerr-Pennington* doctrine, Apple's attempt to base UCL liability on Acacia's patent enforcement activities is also barred by the California litigation privilege.  *See* Cal. Civ. Code § 47(b).  The privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal.3d 205, 212 (Cal. 1990).  The litigation privilege applies not only to common law actions but also bars statutory causes of action, such as a claim under California Business & Professions Code § 17200.  *Rubin v. Green*, 4 Cal.4th 1187, 1202 (Cal. 1993).

The litigation privilege serves important public policies.  "The principal purpose of [the litigation privilege] is to afford litigants and witnesses utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  *Silberg*, 50 Cal.3d at 213 (internal citation omitted).  Because it is so crucial to affording free access to the courts, the privilege under California Civil Code § 47(b) is **absolute**.  *Id*. at 215 ("To effectuate its vital purposes, the litigation privilege is held to be absolute in nature.").  The litigation privilege applies to all litigation-related communications, even those that are alleged to be malicious, fraudulent, or in bad faith.  *O'Keefe v. Kompa*, 84 Cal. App. 4th 130, 135 (2000) ("For policy reasons, even an act committed fraudulently or with malice is privileged under section 47, subdivision (b).");  *Cabesuela v. Browning-Ferris Indus.*, 68 Cal. App. 4th 101, 112 (1998) (even bad faith communication are absolutely privileged);  *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002) (communications privileged even if "they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal").  The privilege applies to all of the Acacia litigation-related conduct alleged by Apple, including filing and prosecution of lawsuits.  *Rubin*, 4 Cal.4th at 1195 (act of filing and prosecuting lawsuits is "clearly within the scope of the privilege.");  *see also Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577-78 (1976) ("a demand letter

1   such as that sent by [defendant] is fully privileged under section 47"); *Aronson v. Kinsella,* 58

2   Cal. App. 4th 254, 262 (1997); *Rubin,* 4 Cal.4th at 1194 ("numerous decisions have applied the

3   privilege to prelitigation communications").  Apple's reliance on "litigation costs" as its alleged

4   basis for standing under the UCL only confirms that its claim is based on privileged conduct, and

5   such an alleged injury cannot form the basis of a tort claim because of the immunity afforded by

6   the litigation privilege.

7   **VI.    APPLE HAS FAILED TO ESTABLISH PERSONAL JURISDICTION**

8          Apple's SAC includes no allegations that are sufficient to establish the Court's personal

9   jurisdiction over VoiceAge, which Apple admits is a Canadian corporation headquartered in

10  Montreal. SAC ¶ 6.  In opposing a motion to dismiss for lack of personal jurisdiction, the

11  plaintiff bears the burden of establishing that jurisdiction is proper.  *CollegeSource, Inc. v.*

12  *AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).  Apple must make a "prima facie

13  showing" of personal jurisdiction in order to overcome a motion based on Rule 12(b)(2).  *Swartz*,

14  476 F.3d at 766.  "Even so, mere 'bare bones' assertions of minimum contacts with the forum or

15  legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading

16  burden."  *Id.* The allegations of the SAC are nothing more than inadequate "bare bones"

17  assertions and legal conclusions with no supporting specific factual allegations.  Personal

18  jurisdiction is not even mentioned in the SAC, and even the allegation purporting to establish

19  venue is a vague and conclusory statement that "VoiceAge resided, transacted business, [was]

20  found, or had agents in this District."  SAC ¶ 9.  This falls far short of the required showing of

21  minimum contacts necessary for establishing personal jurisdiction.

22

23

24

25

26

27

28

1

## VII.    CONCLUSION

2          For the foregoing reasons, VoiceAge respectfully requests that the Court dismiss all

3 claims against VoiceAge in the Second Amended Complaint with prejudice.

4

5 Dated:  December 7, 2017                    WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation
6

7
                                             By: /s/ James C. Yoon
8                                            James C. Yoon

9                                            *Attorneys for Defendant*
                                             *VOICEAGE CORPORATION*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28