1  JAMES C. YOON, State Bar No. 177155
   MAURA L. REES, State Bar No. 191698
2  RYAN R. SMITH, State Bar No. 229323
   JAMIE Y. OTTO, State Bar No. 295099
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
6  Email:     jyoon@wsgr.com
              mrees@wsgr.com
7             rsmith@wsgr.com
              jotto@wsgr.com
8
   *Attorneys for Defendant*
9  VOICEAGE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 5:16-CV-7266-EJD |
| Plaintiff, | Assigned to Hon. Edward J. Davila |
| vs. | **VOICEAGE CORPORATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(2)** |
| ACACIA RESEARCH CORPORATION, SAINT LAWRENCE COMMUNICATIONS, LLC, SAINT LAWRENCE COMMUNICATIONS GMBH, AND VOICEAGE CORPORATION, | JURY TRIAL DEMANDED |
| Defendants. | Date: February 22, 2018<br>Time: 10 a.m.<br>Judge: Honorable Edward J. Davila<br>Courtroom: 4 - 5th Floor |

**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

## I. INTRODUCTION

Through this lawsuit, Plaintiff Apple Inc. ("Apple") is seeking to hold VoiceAge Corporation ("VoiceAge") liable for transferring its patents to Acacia Research Group (collectively with Saint Lawrence Communications, LLC ("SLC"), and Saint Lawrence Communications GmbH, "Acacia").  But there is no basis for such liability.  Apple has not cited or alleged any ETSI IPR Policy provision beyond those that require VoiceAge to offer FRAND licenses for its SEPs and to transfer any applicable FRAND obligations upon transfer of declared SEPs.  Apple's Second Amended Complaint ("SAC") does not cite or allege any ETSI IPR Policy provision preventing VoiceAge from selling and transferring its SEPs and FRAND obligations to a non-practicing entity in exchange for ▮▮▮▮▮.  There are no such provisions.  But Apple now attempts to bootstrap its breach-of-FRAND claim against Acacia into breach of contract, antitrust, and unfair competition claims against VoiceAge.  Apple's SAC makes repeated conclusory allegations and provides no facts that warrant a conclusion that VoiceAge conspired with or had any understanding with Acacia to engage "in an anticompetitive scheme" "in contravention of its FRAND obligations."  SAC ¶ 1.

Apple has not and cannot plead facts sufficient to meet the pleading requirements under *Twombly*.  Apple fails to allege any *evidentiary facts* that demonstrate that VoiceAge had the intent to cause Acacia to breach FRAND, let alone any facts that demonstrate the necessary "meeting of the minds" between Acacia and VoiceAge for an antitrust claim.  Once all of Apple's conclusory allegations from the SAC have been weeded out, the only remaining allegations relate to nothing more than VoiceAge's lawful conduct:  VoiceAge transferred its patents to Acacia, VoiceAge agreed that Acacia would independently engage in patent enforcement activities, and VoiceAge agreed to ▮▮▮▮▮.  None of these or any other allegations relating to *VoiceAge's conduct* are sufficient to support the conclusory allegation that VoiceAge had "*knowledge and intent that Acacia would not abide by the terms of VoiceAge's FRAND commitment.*"  *Id.* ¶ 46 (emphasis added).

Because Apple's SAC is deficient and fails to state a claim, the Court should dismiss all three causes of action against VoiceAge.

## II. ALL CLAIMS AGAINST VOICEAGE SHOULD BE DISMISSED, OR ALTERNATIVELY STAYED, BASED ON THE FIRST-TO-FILE RULE TO MAXIMIZE JUDICIAL ECONOMY, CONSISTENCY, AND COMITY.

As explained in VoiceAge's Motion, "[t]he first-to-file rule is intended to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly.'" *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015) (citations omitted). "When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'" *Id.* (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). A court analyzes three factors for the first-to-file rule: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *Id*. Here, the parties do not dispute that the Eastern District of Texas ("EDTX") case was first-filed, but Apple incorrectly argues that neither the parties nor the issues are similar.

### A. Adding VoiceAge to this Lawsuit Does Not Defeat the First-to-File Rule Because the Ninth Circuit Has Held that the First-to-File Rule Does Not Require Exact Identity of the Parties.

Courts have held that the first-to-file rule does not require exact identity of the parties. *Kohn Law Grp.*, 787 F.3d at 1239-40 (citations omitted). Rather, the first-to-file rule requires only "*substantial similarity*" of parties. *Id.* (emphasis added) (citations omitted); *see generally Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (noting that the first-to-file rule should not be applied "mechanically"). Here, Apple argues that "VoiceAge . . . is *not* even a party in SLC's pending patent infringement action in the [EDTX case]" and that the parties are not substantially similar here because VoiceAge is not named in the EDTX case. Opp. at 5. But in *Alltrade, Inc. v. Uniweld Prods., Inc.*, the Ninth Circuit affirmed a district court's decision not to hear a second-filed case under the first-to-file rule even though the first-filed case included a defendant not named in the second case. 946 F.2d 622, 624 & n.3, 629 (9th Cir. 1991). "A contrary holding could allow a party [] to evade the first-to-file rule merely by omitting one party from a second lawsuit." *Kohn Law Grp.*, 787 F.3d at 1240. That is precisely what Apple seeks to do here by adding VoiceAge to this lawsuit after failing to join VoiceAge as a party in the EDTX case. There is no reason why Apple could not and should not have joined its claims against VoiceAge in that case, where the same issues are raised. Mot. at 4-5

(comparing Apple's claims in this action to Apple's counterclaims in the EDTX case). Thus, adding VoiceAge in this action does not defeat application of the first-to-file rule. Such "conclusion avoids awarding such gamesmanship and is consistent with the first-to-file rule, which is to maximize judicial economy, consistency, and comity." *See Kohn*, 787 F.3d at 1240 (citing *Cadle Co.*, 174 F.3d at 604).

### B. The Court Should Apply the First-to-File Rule Because Apple's Factual Allegations in the EDTX Case Overlap Nearly Entirely with Apple's Factual Allegations against VoiceAge in This Case.

Despite Apple's insistence that its claims in the two cases are not identical, that does not negate the fact that the claims in both cases "arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" *See* Opp. at 6 (quoting *Gulec v. Boeing Co.*, 698 F. App'x 372, 373 (9th Cir. 2017)). As VoiceAge demonstrated in its Motion, Apple's *factual allegations* in its counterclaims and defenses in the EDTX case overlap nearly entirely with Apple's *factual* allegations against VoiceAge here. While Apple did not raise identical claims in the EDTX case, it certainly could have and should have made those allegations there, rather than dragging the parties into this Court and initiating a new action. Not doing so is certainly contrary to "maximiz[ing]" "judicial economy, consistency, and comity." *Cadle Co.*, 174 F.3d at 604.

Apple argues that the previously-filed EDTX case "bears little resemblance to" the present case simply because it added claims against VoiceAge. Opp. at 1. But as demonstrated in VoiceAge's Motion, Apple's *factual allegations* are entirely overlapping. Mot. at 4-5. Apple's SAC (and Apple's Opposition) repeatedly refers to and relies on Acacia's alleged non-FRAND royalty demands and litigation tactics as directly causing the harm to Apple. *See, e.g.*, SAC ¶ 25 ("[VoiceAge] . . . has conspired with Acacia to take advantage of Acacia's status as a PAE and its abusive patent enforcement strategies . . . ."); SAC ¶ 26 ("After acquiring the VoiceAge patents, Acacia immediately raised the license price for the patents and began to demand above-FRAND royalties."). Here, Apple claims that "Apple's past and continuing harm includes litigation costs [and] supracompetitive licensing rates." SAC ¶ 48; *see* SAC ¶ 66 ("Apple has suffered economic harm in the form of litigation costs and diversion of resources away from innovation."). In the EDTX case, Apple claims that "Apple has been harmed by

these breaches and has been forced to expend resources defending against [SLC's] claims." Apple Inc.'s Amended Answer, Defenses, and Counterclaims to Plaintiff Saint Lawrence Communications LLC's Complaint for Patent Infringement ("Apple Countercl.") ¶ 81, *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-00082-JRG (E.D. Tex. Nov. 16, 2016), Dkt. 92.

The EDTX case will resolve a major aspect of the present lawsuit. Apple's claims against VoiceAge are entirely based on the premise that "VoiceAge breached its FRAND commitments under Clause 6.1 of the ETSI IPR Policy and multiple declarations it submitted thereunder (SAC ¶¶ 17, 20), by 'transferring [its declared SEPs] to Acacia *with the knowledge and intent that Acacia would not abide by the terms of VoiceAge's FRAND commitment*.'" Opp. at 9 (emphasis added) (citing SAC ¶ 46). This issue of whether Acacia was bound by VoiceAge's FRAND commitments and whether Acacia (and therefore VoiceAge) complied with those commitments will be resolved once the EDTX court issues a judgment on Apple's Sixteenth Counterclaim of Breach of Contract in the EDTX case:

> 79. Further, as described above in paragraphs 83 through 100 of Apple's Affirmative Defenses, VoiceAge, the predecessor-in-interest to the Patents-in-Suit, repeatedly agreed to license the Patents-in-Suit on FRAND terms. By committing to license the Patents-in-Suit on FRAND terms, VoiceAge entered into contractual commitments with ETSI. Apple is an intended third party beneficiary of these contractual commitments. SLC became bound by these contractual commitments when it purchased the Patents-in-Suit from VoiceAge.
>
> 80. SLC has breached these contractual commitments by failing to make a FRAND offer for the Patents-in-Suit.

Apple Countercl. ¶¶ 79-80. Apple's claims here are duplicative and wasteful, and risk leading to inconsistent results. Thus, this Court should apply the first-to-file rule and dismiss this case, or in the alternative, grant a stay until the EDTX case is resolved.

### III. APPLE FAILS TO PLEAD BREACH OF CONTRACT.

Apple's Opposition confirms that it lacks the factual allegations necessary to support its breach of contract claims. In its Opposition, Apple identifies the contract provision that it alleges VoiceAge has violated: "Apple alleges that VoiceAge breached its FRAND commitments under Clause 6.1 of the ETSI IPR Policy and multiple declarations it submitted

thereunder (SAC ¶¶ 17, 20)." Opp. at 9.  But Apple fails to allege any facts that could, even if taken as true, demonstrate VoiceAge's breach of Clause 6.1 or VoiceAge's ETSI declarations.

### A. Apple Concedes That VoiceAge's Patent Transfer *by Itself* Does Not Violate VoiceAge's FRAND Commitment under Clause 6.1 of the ETSI IPR Policy and VoiceAge's ETSI Declarations.

Apple concedes that VoiceAge's "mere transfer of patents" is not prohibited by the ETSI IPR Policy.  *Id.* at 8 ("VoiceAge erroneously describes Apple's breach claim as grounded in the mere transfer of patents, and argues that the ETSI IPR Policy does not prohibit transfers of SEP ownership.  But Apple nowhere alleges that VoiceAge was contractually obligated to retain its patents.") (internal citation omitted).  Yet, as explained below, the SAC's only *factual* allegations relate to VoiceAge's patent sale to Acacia.  The remaining allegations are all conclusory or unwarranted inferences that are insufficient to sustain Apple's claims that VoiceAge breached its FRAND commitments under Claim 6.1 of the ETSI IPR Policy or ETSI declarations.

### B. Apple Fails to Plead Evidentiary Facts that Warrant the Conclusion That VoiceAge Transferred Its Patents with "Knowledge and Intent That Acacia Would Not Abide by the Terms of VoiceAge's FRAND Commitment."

"Mere 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.'"  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1019 (N.D. Cal. 2012) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).  Here, Apple makes conclusory allegations supported only by factual allegations that, even taken as true, do ***not*** "suggest that the parties understood that doing so would evade FRAND royalty constraints that had been associated with the transferred patents when they were in VoiceAge's hands."  Opp. at 10.  As a result, Apple's breach of contract claim lacks the factual allegations necessary to support the conclusions that "VoiceAge has breached that [FRAND] obligation *by scheming to subvert it*," *id.* at 8 (emphasis added), and that VoiceAge "transfer[red] [the patents] *with the knowledge and intent that Acacia would not abide by the terms of VoiceAge's FRAND commitment*," *id.* at 9 (citing SAC ¶ 46) (emphasis added).  Accordingly, the Court should dismiss Apple's breach of contract claim against VoiceAge.

1    First, Apple makes much about the fact that "VoiceAge originally successfully licensed its declared SEPs on FRAND terms, without any collaboration with Acacia," *id.* (citing SAC ¶ 24), and that "VoiceAge obtains no efficiencies from transferring its patents to Acacia," SAC ¶ 2. But to the contrary, the fact that VoiceAge originally licensed its declared SEPs on FRAND terms demonstrates VoiceAge's history of respecting its FRAND obligations, which weighs *against* a conclusion that VoiceAge had an intent to circumvent those obligations. There is no factual basis to conclude that "VoiceAge has outsourced licensing and enforcement of the transferred VoiceAge patents to Acacia *for obvious anticompetitive reasons*." *Id.* (emphasis added). Indeed, given the present costly and litigious disputes between Acacia and Apple, a more plausible inference is that VoiceAge simply preferred not to be a licensor involved in these types of disputes. Nothing in these allegations undermines or contradicts the Patent Sale Agreement's clear requirement under Clause 2.1 that Acacia must respect pre-existing FRAND commitments. Mot. Ex. A § 2.1.

Second, Apple alleges that "[REDACTED]" Opp. at 10 (emphasis added). But such conclusion is again unwarranted. Patent pools are not the only way to license SEPs on FRAND terms (nor do they guarantee FRAND terms), nor does Apple allege that they are. VoiceAge may have preferred to avoid patent pools for any variety of lawful reasons, such as wanting to avoid dilution of the value of its declared SEPs resulting from lower quality patents being added to the pool by other members. VoiceAge's preference to avoid a patent pool in no way demonstrates that VoiceAge had an anticompetitive purpose for including Clause 4.4. Thus, the conclusory allegation of VoiceAge's intent to circumvent FRAND is once again an unsupported inference.

Third, Apple's conclusion that [REDACTED] suggests a conspiracy to evade FRAND royalty constraints is also unwarranted. Opp. 4 ("Acacia's sharing of the supracompetitive fruits of this FRAND evasion scheme with

1  VoiceAge drives the very economics of the conspiracy") (citing SAC ¶¶ 25, 34, 56.). ████
2  ████████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████
4  ████████████████████████, simply ensures that Acacia make reasonable efforts seeking
5  royalties—nothing more. These provisions do not guarantee or require that Acacia meet some
6  above-FRAND royalty amounts. Rather, these provisions, along with other provisions in the
7  Patent Sale Agreement, merely allow Acacia to act *independently* when negotiating licenses and
8  enforcing patents while fairly compensating VoiceAge for the transfer of the patents. *See, e.g.*,
9  Mot. at 10 (citing Ex. A § 6.1). These terms do not warrant the conclusion that VoiceAge had
10  any intent to subvert or avoid its FRAND obligations.

11  Any entity that purchases patents has an incentive to monetize those patents, regardless of
12  the payment structure. In fact, ████████████████████████████████████████
13  ████████████, and therefore, would provide Acacia more flexibility to be *less* aggressive with
14  its patent enforcement to recoup those costs. Accordingly, ████████████████████ has the
15  opposite effect of enabling Acacia to agree to *below*-FRAND royalties. Although Apple
16  selectively chooses to read these factual allegations as "suggesting" an intent to evade FRAND
17  commitments, they fall far short from actually doing so. Despite Apple's conclusory allegation
18  that "VoiceAge's agreement with Acacia was *expressly* intended to enable and had the effect of
19  enabling Acacia to extract exorbitant royalties," SAC ¶ 56 (emphasis added), Apple fails to
20  allege any such express statements or agreements, and the actual Patent Sale Agreement
21  contradicts any suggestion of such an intent by VoiceAge. Apple does not plead any facts to
22  suggest that there was any understanding or conspiracy—written or verbal or otherwise—as to
23  any particular rate that Acacia must "extract" (above-FRAND, FRAND, or otherwise) from
24  potential licensees.

25  Finally, it appears that Apple is alleging that the unlawful conduct by VoiceAge is based
26  on *who* purchased VoiceAge's patents and that VoiceAge *should have known* that Acacia would
27  engage in "ruthless" tactics based on Acacia's reputation. Opp. at 9 ("But [VoiceAge] later
28  conspired to transfer those patents to Acacia, which had a 'reputation for brazen and ruthless

patent assertion tactics' (SAC ¶ 30), for the plain purpose of 'tak[ing] advantage of Acacia's status as a PAE and its abusive enforcement strategies to exploit potential licensees' in ways that VoiceAge could not had it retained its portfolio of declared SEPs. (SAC ¶ 25.)" (alteration in original)). But even assuming that Acacia had such a reputation and VoiceAge knew of such reputation, this would be insufficient to support a breach of FRAND claim. This is especially true here because VoiceAge specifically met its obligations under Clause 6.1bis of the ETSI IPR Policy by lawfully transferring its patents and—as Apple concedes—by transferring its FRAND commitments to Acacia through Clause 2.1. *See* Opp. at 10; Mot. Ex. A § 2.1. Furthermore, even if Acacia had a reputation for "ruthless" patent enforcement tactics, Apple falls short of making the allegation that VoiceAge knew that Acacia has ever been found by any court or authority to have actually been in breach of any FRAND commitments. In other words, Apple's alleged facts are insufficient to support the conclusory allegation that VoiceAge "transfer[red] its declared SEPs to Acacia *with the knowledge and intent* that Acacia would not abide by the terms of VoiceAge's FRAND commitment." *Id.* (emphasis added) (quoting SAC ¶ 46).

### C. Apple's SAC Does Not Allege Breach of Clause 6.1bis of the ETSI IPR Policy, and Apple's Breach of Contract Claim Cannot Survive This Motion to Dismiss Based on Allegations of a Breach of That Provision.

Apple concedes that allegations under Clause 6.1bis of the ETSI IPR are outside of and inconsistent with the allegations in its SAC. *See id.* at 12 n.6. Even if they were not, however, because the allegations are based on a misreading of Clause 9.2 of the Patent Sale Agreement, such amended claim should be dismissed. Apple argues that the very last sentence of the "Assignment/Successors" provision towards the end of the Patent Sale Agreement demonstrates an ***intent by VoiceAge*** to subvert its FRAND commitments, despite specific provisions elsewhere throughout the agreement containing the parties' intent to transfer such FRAND commitments and the acknowledgment by Acacia of such FRAND commitments. *See, e.g.*, Ex. A § 2.1; SAC ¶ 21. But, as explained below, reading the last sentence of Clause 9.2 as proof of VoiceAge's intent to "evade VoiceAge's FRAND commitments" would render other provisions meaningless, which is improper under both California and New York law. "[U]nder both California and New York law, courts must interpret contracts as a whole and in a manner that

1  does not render any clause or provision superfluous." *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1164 (S.D. Cal. 2015) (citing *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.") (internal quotations omitted)); *Minerals Techs., Inc. v. OMYA AG*, 406 F. Supp. 2d 335, 337 (S.D.N.Y. 2005) ("Principles of contract interpretation require that a contract be interpreted in a manner that ascribes meaning to all provisions of the contract."); *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1265 (1992) ("[T]he court must interpret the language in context, with regard to its intended function in the policy. This is because language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.") (internal quotations and citation omitted)).

Clause 9.2 is an assignment and successor provision common to these types of intellectual property sales transactions that limits the parties' abilities to transfer their rights under the agreement. The full language of the provision is as follows:



Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

1	Apple argues that the last sentence of Clause 9.2 essentially overrides the stated intent of
2	the parties contained in Clause 2.1 and elsewhere to transfer VoiceAge's FRAND commitment
3	to Acacia.  Opp. at 10 ("███████████████████████
4	████████████████████████████████████████
5	████████████████████████████████████████
6	████████████████████████████████████████
7	████████████████████████████████████████
8	████████████████████████████████████████
9	███████████"  Mot. Ex. A § 2.1.  Similarly, Clause 9.2 requires that ██████████████
10	████████████████████████████████████████
11	████████████████████████████████████████
12	████████████████████████████████████████
13	████████████████████████████████████"  *Id.* at § 9.2
14	(emphasis added).  These provisions demonstrate an intent to transfer VoiceAge's FRAND
15	commitments with the transfer of the declared SEPs.  But these provisions would be rendered
16	meaningless if Apple's misinterpretation of the Patent Sale Agreement—read to mean that
17	VoiceAge intended to evade its FRAND obligations—is taken as true.  Thus, the Court should
18	reject Apple's misinterpretation of Clause 9.2 and dismiss Apple's breach of contract claim.

19	**IV.	APPLE FAILS TO PLEAD VIOLATION OF SECTION 1.**

20	Apple concedes that it must "allege 'enough factual matter (taken as true) to suggest that
21	an agreement has made.'"  Opp at 14 (citing *Twombly*, 550 U.S. at 556).  Yet Apple fails to meet
22	this standard.  The Supreme Court in *Twombly* explained in detail that statements of "parallel
23	conduct" are insufficient to meet the threshold requirement of Rule 8(a)(2):

24	> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."  [].

550 U.S. at 557 (citation omitted).  Here, Apple fails to go beyond the naked assertion of conspiracy.  Although Apple claims that it "has done that by alleging facts plausibly suggesting an agreement in violation of Section 1 that goes beyond the written terms of the Patent Sale and Purchase Agreement," Opp. at 13, Apple fails to provide a single example of such facts.  Instead, as explained above, *supra* Part III(B), Apple's SAC and Opposition merely repeat the same conclusory allegations and parallel conduct to conclude that VoiceAge was "part of a scheme that had the purpose and effect of evading FRAND commitments and exploiting Apple and other potential licensees."  *Id.* (citing SAC ¶¶ 55-56); SAC ¶ 2 ("VoiceAge transferred its patents to and conspired with Acacia to take advantage of Acacia's ability, as a patent assertion entity (PAE), to engage in brazen and exploitive patent assertion conduct, including demanding and receiving exorbitant non-FRAND royalties.").

In other words, Apple's antitrust claim is premised on the theory that because VoiceAge sold its patents to a patent assertion entity that purportedly breached FRAND commitments, VoiceAge must have sold its patents with the anticompetitive purpose of breaching and evading FRAND commitments.  This is the exact type of "bootstrapping" of a FRAND breach claim that has been rejected in this Circuit.  In *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*, the court found that TCL could not rely on evidence that Ericsson had breached FRAND to demonstrate that it did so in an anticompetitive way. No. SACV 14-0341 JVS (DFMx), 2016 U.S. Dist. LEXIS 140566, at *16-17 (C.D. Cal. Aug. 9, 2016) (citing *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007)).  The court found "[no] authority for this kind of bootstrapping of a breach of contract case, without more, into a violation of the policy or spirit of antitrust laws.  Instead, as the *Broadcom* court made the 'intentionally false promise' and subsequent 'breach of that promise' two separate elements, it is clear that there needs to be some other conduct by Ericsson than mere breach of its FRAND obligations." *Id.* at *17.  Similarly, the Court should require that Apple plead facts that *separately* support VoiceAge's *intent* to breach FRAND, VoiceAge's (not Acacia's) breach of FRAND, and Acacia's subsequent breach of FRAND.  Apple's SAC, as it is currently pled, collapses together these separate elements.

As demonstrated in VoiceAge's opening brief, Mot. at 9-11, and above, *supra* Part III(B), all of the *factual* allegations made by Apple regarding VoiceAge's conduct are the exact kind of "statement of parallel conduct" that the Supreme Court has held is insufficient to meet the threshold requirement of Rule 8(a)(2). *Twombly*, 550 U.S. at 557. VoiceAge's lawful sale of its patents to Acacia, the terms of the Patent Sale Agreement, and the fact that Acacia is a patent assertion entity are merely *parallel* conduct and circumstances that do not show the *agreement* to conspire that is necessary to make out a Section 1 claim. In fact, the alleged conduct demonstrates the contrary: that there was no conspiracy, VoiceAge intended to respect its FRAND obligations, and Acacia acted independently. Because VoiceAge explicitly transferred its FRAND commitments to Acacia, VoiceAge had no understanding that it would receive above-FRAND royalties, and VoiceAge had no ability to influence Acacia's patent enforcement strategies and litigation tactics, Apple's Section 1 claim must fail.

## V. IF APPLE'S SECTION 1 CLAIM FAILS, THEN APPLE'S UCL CLAIM ALSO FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED.

As explained in VoiceAge's Motion, "[W]here the same conduct alleged to be unfair under [California's Unfair Competition Law, California Business & Professions Code § 17200 ("UCL")] is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims." Mot. at 11 (citing *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1146 (N.D. Cal. 2010)). Apple does not dispute that the conduct Apple asserts is unfair under the UCL overlaps completely with Apple's Sherman Act claim. Thus, because Apple's federal claims serve as the basis for its state law claims, the state law claims should be dismissed on the merits.

## VI. BECAUSE APPLE FAILS TO IDENTIFY ANY HARM OTHER THAN INJURIES FLOWING FROM LITIGATION, ITS UCL CLAIM SHOULD BE DISMISSED.

Apple's Opposition confirms that it lacks the standing necessary to pursue its unfair competition claim under the *Noerr-Pennington* doctrine. "When courts have directly considered the [*Noerr-Pennington*] doctrine, they have found that injury flowing solely from previous, protected litigation activity cannot be the basis of standing under the UCL." *TCL Commc'ns Tech. Holdings*, 2016 U.S. Dist. LEXIS 140566, at *9 (citing *James R. Glidewell Dental*

*Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC ANX, 2013 WL 655314, at *13-14 (C.D. Cal. Feb. 21, 2013) ("[B]ecause Defendant's only attempt to establish economic injury rests on the allegation that Plaintiff's lawsuit caused it to lose business, the Court finds that the . . . *Noerr-Pennington* doctrine appl[ies].")). Yet Apple fails to identify a single loss or injury beyond those that flow from Acacia's patent infringement litigation. *Id*. (citing SAC ¶¶ 26, 38-39, 66). Apple identifies only "substantial litigation costs" and makes generic references to "losses" and "lost money." Opp. at 17-18 ("Apple—itself—has lost money, including incurring substantial litigation costs, and is threatened with even more losses as a result of VoiceAge's and Acacia's continuing unlawful conduct.") (citing SAC ¶¶ 26, 38-29, 66). As a result, Apple's unfair competition claim should be dismissed.

The court in *Apple, Inc. v. Motorola Mobility, Inc.* dealt with a similar fact pattern as the present case: economic injury premised on litigation costs. 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012) ("[T]he only injury Apple suffered as a result of [defendant's] alleged antitrust violation was the attorney fees and costs that it has incurred responding to the patent litigation initiated by [defendant]. . . . Thus, Apple's antitrust claim is premised on Motorola's attempt to enforce its patents."). There, the Court found the defendant immune from unfair competition claims when the purported injury was caused by conduct protected under *Noerr-Pennington*. *Id*. at 1077. Here, Apple attempts to distinguish this case by arguing that "the litigation is a component of a broader course of anticompetitive conduct." Opp. at 19 (citation omitted). But, as explained above, Apple's factual allegations relating to the "broader course of anticompetitive conduct"—and the resulting harm—are insufficient to meet the pleading standard under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Furthermore, none of the exceptions to *Noerr-Pennington* apply here. Although Apple puts forth allegations that Acacia had a particular motive in filing its patent infringement lawsuits, *see* SAC ¶¶ 26-28, such conclusory allegations about motive are insufficient to defeat a

motion to dismiss.  Instead, Apple must also have *factual* allegations that Acacia's lawsuits were objectively baseless, were started without regard to their merits, or involved making intentional misrepresentations to a Court.  Apple's SAC has no factual allegations of any of those factors.

*Apple Inc. v. Samsung Electronics Co., Ltd.* is of no greater help to Apple.  That case, like here, turned on pleading standards, and the court permitted a counterclaim for anticompetitive behavior to survive a motion to dismiss only because the counterclaims alleged "*specific facts about when the false FRAND declarations were made, by whom, and for which patents.*"  No. 11-CV-01846, 2012 WL 1672493, at *7 (N.D. Cal. May 14, 2012) (emphasis added).  Here, Apple does not allege that VoiceAge made false declarations but instead that VoiceAge breached FRAND by conspiring with Acacia to breach FRAND.  Yet it provides no *specific facts* about when or how such conspiracy was made.

Apple also argues that VoiceAge should not be protected by the California litigation privilege because "[VoiceAge] makes no argument that it was otherwise a participant" in Acacia's lawsuits.  Opp. at 18.  But given that VoiceAge was specifically identified in Apple's allegations in the EDTX case as a third party, Apple cannot and does not argue that VoiceAge was not a participant in the EDTX case.  *See generally* Apple Countercl.; *see also* Dkt. 128, Apple's Opposition to Acacia Mot., at 6 ("Apple obtained certain discovery from VoiceAge in the EDTX case . . . .").  Moreover, Apple alleges that VoiceAge is liable for Acacia's litigation conduct as a conspirator with Acacia, which is plainly a characterization of VoiceAge as a participant in such litigation.  Opp. at 18 ("Apple alleges that VoiceAge *participated* in an anticompetitive conspiracy with Acacia that has harmed, and is continuing to harm, Apple, including by subjecting Apple to litigation costs.") (emphasis added).  And, in any event, California courts have repeatedly rejected a "mutuality of parties" requirement for application of the litigation privilege.  *See, e.g.*, *Moore v. Conliffe*, 7 Cal. 4th 634, 658 (1994) (affirming sustaining of demurrer on grounds of litigation privilege in action against non-party in prior proceeding); *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 26 (2002) (affirming sustaining of demurrer based on litigation privilege where neither litigant was party in underlying action); *Brown v. Kennard*, 94 Cal. App. 4th 40, 48 (2001) (affirming sustaining of

demurrer on grounds of litigation privilege where plaintiff was "a nonparty" in the underlying action).

Finally, Apple's claim that Acacia's lawsuits are "one component of a much broader anticompetitive scheme," Opp. at 19, does not diminish the application of the litigation privilege here. Apple alleges no economic injury caused by an allegedly broader conspiracy or course of conduct. Rather, the only effort by Apple in the SAC to claim an economic harm to Apple that is cognizable by the UCL is the allegation that Apple suffered economic harm "in the form of litigation costs"—which points not to a broader scheme, but solely to the pursuit of litigation by Acacia. In these circumstances, the litigation privilege bars the unfair competition claim. Thus, the Court should dismiss Apple's antitrust and unfair competition claims.

### VII. THIS COURT DOES NOT HAVE INDEPENDENT PERSONAL JURISDICTION OVER VOICEAGE WITH RESPECT TO THE STATE LAW CLAIMS.

The Court must have personal jurisdiction for each claim alleged against a defendant. *Universal Stabilization Techs., Inc. v. Advanced BioNutrition Corp.*, No. 17cv87-GPC(MDD), 2017 U.S. Dist. LEXIS 70090, at *15-16 (S.D. Cal. May 8, 2017) (citing *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). Here, Apple urges the Court to exercise personal jurisdiction over VoiceAge for the entirety of Apple's claims based solely on pendent personal jurisdiction. Under the doctrine of pendent personal jurisdiction, the district court has discretion to decide whether to retain or dismiss pendent state-law claims that arise out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction. *Id*. If the Court dismisses Apple's federal claims against VoiceAge, this Court should also dismiss the state law claims of breach of contract and violation of the UCL given that this Court does not have an independent basis for personal jurisdiction for such claims against VoiceAge.

### VIII. CONCLUSION

For the reasons set forth above and in the papers submitted in support of VoiceAge's Motion to Dismiss, VoiceAge respectfully requests that the Court dismiss all claims against VoiceAge in the Second Amended Complaint with prejudice.

| | |
|---|---|
| Dated: January 18, 2018 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br><br>By: */s/ James C. Yoon*<br>James C. Yoon<br><br>*Attorneys for Defendant*<br>*VOICEAGE CORPORATION* |